[No. 19226.  Department Two.  August 19, 1925.]

M. R. SMITH LUMBER & SHINGLE COMPANY, *Appellant;*
v. NETHERLANDS FIRE & LIFE INSURANCE COMPANY
*et al., Respondents.*[1]

INSURANCE (30)—THE CONTRACT—EXECUTORY OR ORAL CONTRACTS.
A valid contract for insurance on new conditions, prior to actual
change of the policies, is not established by negotiations carried on
by correspondence for a change in the form of fire insurance policies,
showing a request therefor which the companies were willing to
comply with on condition that the assured furnished additional
forms, which was not done when the fire occurred.

SAME (86, 94)—FORFEITURE OF POLICY BY BREACH OF PROMISSORY
WARRANTY—COVENANTS OF POLICY—PRECAUTIONS AGAINST LOSS. Where
applications for fire insurance recited that the property was equipped
with automatic sprinklers, which was made a condition precedent
to recovery, breach of a covenant to maintain the sprinklers will
bar any recovery for a fire occurring before the sprinklers had been
installed; such breach not being within Rem. Comp. Stat., § 7078,
providing that representations or warranties made in the negotia-
tion of insurance shall not defeat the policy unless made with intent
to defraud.

Appeal from a judgment of the superior court, for
King county, Abel, J., entered October 2, 1924, upon
findings in favor of the defendants, in consolidated ac-
tions upon fire insurance policies, tried to the court.
Affirmed.

*Shank, Belt & Fairbrook,* for appellant.

*Fred G. Clarke,* for respondents.

FULLERTON, J.—The appellant, M. R. Smith Lumber
& Shingle Company, is engaged in the business of man-
ufacturing lumber and shingles, and owns and operates
an extensive plant, located at Moclips, in this state.
A part of its mill property consists of a number of
dwelling houses, used as residences by certain of its
officers and employees.  These dwelling houses it had

[1]Reported in 238 Pac. 565.

caused to be insured in the respondent insurance companies, through E. A. Strout & Co:, an insurance agency having its principal office in the city of Seattle. The policies were issued on various dates during the year 1922, and each ran for a period of three years.

The bulk of the insurance the appellant carried on its plant was in companies represented by the Martin General Agency, an insurance agency also having its principal office in the city of Seattle. These policies, like those before mentioned, seem to have been upon specifically described parts of the plant, none of them being what is known as blanket coverages. About July 1, 1923, the Martin General Agency recommended to the appellant that it make a change in its method of effecting insurance from that of specific coverage to blanket coverage, so that each several policy, instead of covering a specific building, should cover the entire plant, and thus be responsible for its pro rata share of any loss by fire that should occur at the plant. The appellant authorized the agency to make the change, and to that end, on July 3, 1923, the agency wrote the following letter to E. A. Strout & Co.:

"E. A. Strout & Co.,                    July, 3, 1923.
Hoge Building,
Seattle, Washington.

"M. R. Smith Lumber & Shingle Co.
Gentlemen:

"We are enclosing forms amending the covering for the assured, on insurance placed through your agency. Will you please sign the original copy, sending it to this office for delivery to the assured. If additional copies are required they will be supplied on request.

"Will you please supply us with the attachment date of the insurance written through your office.

"Very truly yours,
"The Martin General Agency,
"By O. J. Gitzen."

The enclosures in the letter were forms in the nature of riders to be attached to the policies, and purported to change the contract of insurance from that of coverage upon specifically described parts of the plant to that of coverage upon the general property of the plant. The forms contained, among others, the following stipulations:

"Sprinkler Warranty.

"Certain buildings on the above described premises having been equipped with automatic sprinklers and a reduction in the rate of premium made, therefore, in consideration of such reduced rate, it is hereby made a condition precedent to the recovery of any loss under this policy that the insured shall use due diligence to maintain such equipment in complete working order during the full term of this insurance.

"Reduced Rate Average Clause.

"In consideration of the reduced rate at which, and the form under which this policy is written, it is expressly stipulated and made a condition of the contract that, in the event of loss, this Company shall be liable for no greater proportion thereof than the amount hereby insured bears to ninety per cent (90%) of the actual value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

To this letter the following reply was sent:

"Seattle, Wash., July 6, 1923.
"The Martin General Agency,
Central Bldg.,
Seattle.
Gentlemen:

"Replying to your favor of July 3rd, in relation to insurance on the M. R. Smith Lumber & Shingle Company, in which you sent one set of forms to be attached to the policy written by us, we beg to say that at the present time we have nine policies covering on their

various dwellings, all of which are written for three years and do not expire until 1925. We cannot attach this form to a term policy; and the only way we can see how the matter could be handled would be for the assured to cancel these policies on a pro rata basis, and rewrite them for the same amount covering on the general form at the general form rate. Or of course, the assured could cancel this business on a short rate basis.

"If you want the policies cancelled and re-written for one year from this date, covering as per form you sent us, we will need four sets of the form, as we have four companies now covering on this risk. We await your further pleasure.

"Yours truly,
"E. A. Strout & Co."

On July 21, 1923, the Martin General Agency again wrote concerning the matter. Its letter was addressed to E. A. Strout, the manager of E. A. Strout & Co., although intended for the agency. The letter was as follows:

"Mr. E. A. Strout,                    July 21, 1923.
Hoge Bldg.,
Seattle, Wash.

"M. R. Smith Lumber & Shingle Co.
Dear Sir:

"Some time ago we sent you amended forms for attachment to policies to cover on blanket form and as your policies cover on dwellings and are issued for a period of three years, it will be necessary for you to cancel and write the policies issued thru your agency, in order that the new forms will be applicable. Application has been made of the rating bureau for an average rate, dated from July 1st, 1923.

"It is the assured's desire to have all changes made effective July 1st.          Yours very truly,

"The Martin General Agency,
"By O. J. Gitzen,
"Special Hazard Department."

The reply was as follows:

"Seattle, Wash., July 26, 1923.

"The Martin General Agency,
Central Bldg.,
Seattle, Wash.

Gentlemen:

"We are in receipt of your favor of July 21st, in relation to policies that we have covering on dwelling of the M. R. Smith Lumber & Shingle Co. We note that it is the assured's desire to have these policies cancelled and rewritten under the general schedule as of July 1st. We will be very glad to comply with the assured's wishes in this matter, if you will furnish us with 27 forms. As soon as you furnish us with the average rate, which we understand the Board is now making, this matter will be attended to. In the meantime, please send us the necessary number of forms.

"Yours very truly,
"E. A. Strout & Co."

A part of the plant consisted of a shingle mill of which a dry kiln was an appurtenant. On July 26, 1923, a fire broke out in the kiln, damaging the mill property to the extent of $15,903.72; none of the dwellings covered by the policies issued by the respondent companies, however, was destroyed or damaged by the fire. At the time of the fire, the automatic sprinkler was not in operation; in fact, it never had been so, it being then in an incompleted condition, although in the process of construction. This fact, however, was not known to either of the respondent insurance companies, or to the agency of E. A. Strout & Co., until after the time of the correspondence above set out.

After the fire loss occurred, the appellant brought several actions against them to recover for a pro rata share of the loss. These actions were, by the stipulation of the parties, consolidated for the purposes of trial and for the purposes of appeal, and were tried

as one action before the court, sitting without a jury. The court, after finding that the sprinkler system mentioned in the forms intended to change the coverage of the existing insurance had not been installed prior to the time of the fire, further found that unsprinkled shingle mills were on the prohibited list of each of the respondents, and that neither of them does write, and under no circumstances would write, insurance on unsprinkled mills, such as the mill of the appellant. As matter of law, it concluded:

"I.  That the statements as to the sprinkler system contained in the warranty submitted by plaintiff in said general form were untrue, and were made, in contemplation of law, with intent to deceive said defendant.

"II.  That the defendant is entitled to judgment dismissing plaintiff's complaint herein.

"III.  That the defendant is entitled to judgment against the plaintiff for its costs and disbursements herein to be taxed."

Judgments were entered in accordance with the findings and conclusions. The appeal is from the judgments so entered.

It is the contention of the appellant that the letters above set forth, coupled with the surrounding facts and circumstances, constituted a valid agreement between the appellant and the respondents to change the existing contracts of insurance from that of specific coverage on specially described property of the appellant to general coverage on all of its property; arguing that the issuance of a formal policy is not necessary to effect insurance, but that a contract to insure is valid from the time it is made, regardless of whether a formal policy is or is not issued. But we cannot concede that the letters will bear the interpretation put upon them.

It is the rule in most jurisdictions, and is the rule in this jurisdiction, that a formal issuance of a policy is not necessary to effect a contract of insurance; but it is also the rule that a contract to insure, to be obligatory in advance of the issuance of the policy of insurance, must be in itself complete and unconditional, so far as to leave nothing to be done but the formal issuance of the policy. As we read the letters set out and the surrounding conditions shown in the record, the negotiations between the parties had not reached that final stage necessary to constitute an unconditional promise. The letters show a request to make the change in the form of the coverage, and further show a willingness to comply with the request; but they also show that the expression of willingness was coupled with conditions to be performed on the part of the appellant which were not performed by the appellant before the fire loss, and which in fact never were performed. The last of the letters quoted, we think, makes this conclusion inevitable. While there is therein an expression of willingness to comply with the assured's request, there is no direct promise so to do. The promise made is coupled with a condition that the assured furnish additional forms, and furnish the rate of insurance, which it appears had not then been fixed.

It will not do to say that these matters were inconsequential. The respondents had the right to say on what conditions they would make the change; and if they annexed conditions seemingly of consequence to themselves, the courts are not empowered to say that they are either whimsical or inconsequential. On the principle, therefore, that there was not an unconditional promise to insure, the judgment of the trial court must be sustained.

We think, moreover, that, were the promise to be

construed as unconditional, there could be no recovery because of the breach of the warranty clause contained in the contract. Unsprinkled mill property was on the respondents' forbidden lists. Under no circumstances would they insure such property. The riders furnished, which induced the promise, recited that these mills were equipped with automatic sprinklers, and it was made a condition precedent to a recovery of any loss under the contract that the insured should use due diligence to maintain such equipment in complete working order. The record fails to show a compliance with this condition of the contract. It shows, in fact, that no such sprinklers were ever installed.

It is true that the insurance code (Rem. Comp. Stat. § 7078) provides that no oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance by the insured shall be deemed material, or defeat or void the policy, unless made with an intent to deceive. But the warranty here was something more than this. It was a promise to maintain the sprinklers after the insurance was effected; and if it be held that the misrepresentation with respect to their existence does not defeat or void the contract because not made with an intent to deceive, it does not follow that the failure of the insured to maintain them is without consequence. Nor can we so hold. The legislation affects the first, but not the last, and to the last the courts are at liberty to apply the usual and ordinary rules. Applying these rules, it must be concluded that the appellant has not complied with the contract of insurance, even conceding there was a contract of insurance.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MACKINTOSH, and MAIN, JJ., concur.